In the United States District Court
for the Northern District of Ohio



Damien L. Ware.
3122 Livingston
Cleveland Oh
44120

      Plaintiff,
        V.

The Department of Veteran Affairs
Robert Wilkie
Secretary of Veteran Affairs
810 Vermont Avenue
NW Washington, DC
20420

      Defendant

Civil Action No

# 1:20 CV 1487

## JUDGE GAUGHAN

6/24/2020

Misinterpretation and procedural violation of *38 U.S.C. 714* and violation of 5 U.S. Code 2302 (b)(8), (b)(9)(A)(i), (B), (C), and (D) in both proposed and actual removal.

I am seeking corrective action under the provisions of 5 U.S.C. 1214(a)(3) *Investigation of prohibited personnel practices; corrective action* and 5 U.S.C. 1221 *Individual right of action in certain reprisal cases*. My termination from the Department of Veteran Affairs for so-called "Inappropriate Behavior" during pending investigations and after a grievance was filed, violates 5 U.S. Code 2302(b)(8), (b)(9)(A)(i), (B), (C), and (D) *Prohibited Personnel Practices*. Furthermore, I argue that the Department of Veteran Affairs made a number of procedural errors as it pertains to section (c) (1) (A) of U.S.C. 714, in terms of (1) the aggregate period for notice, response, and decision; (2) the consistency of "inappropriate behavior" as it relates to V.A.'s table of penalty (see table of penalties for title 5, Hybrid title 38, and title 38 employees) (3) V.A's procedural errors as it relates to specification 6, 9 – 11 of the *Douglas Factors* in their determination of discipline (*see Douglas vs. Veterans Administration, 5 M.S.P.R. 280 (1981)*. In considering my I.R.A. Appeal. I have satisfied the O.S.C. procedure requirement in regards to the termination of investigation *(see O.S.C. letter dated 4/16/2020)*.

*see Appendix A for evidence

## Procedural violation of 38 U.S.C. 714

In speaking to procedural violation *of 38 U.S.C. 714*, the statute gave The Department of Veteran Affairs fifteen days to make decision on proposed removal where section (c) (1) (A) states:

*"The aggregate period of notice, response, and final decision in a removal, demotion or suspension under this section may not exceed 15 business days."*

My termination dated March 16, 2020, Director Anthony Milions decided to take action 6 months and 11 days after the proposal to remove was presented by N.C.C Management. This action was also taken 30 days after E.E.O.C issued affidavits for a pending mixed case appeal and the decision to terminate me was made one week after- a 6th grievance was filed against N.C.C Lead Mr. Edward Johnson for gossip, intimidation and micro-management.

As a Legal Administrative Specialist within Cleveland's Regional Office, I have endured intimidation, harassment and unequal treatment throughout my tenure. In doing my best to resolve each and every issue, I advocated for myself and others, indirectly. In reporting issues as they happened and developing an extensive paper trail, my hostile work environment is documented and well known by V.A. Leadership through the filing of grievances with substantial evidence.  The Department of Veteran Affairs made procedural mistakes when enacting my removal based on these facts. Under number 11 of the *Douglas Factor* provisions it states:

*"Mitigating circumstances surrounding the offense such as unusual job tension, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved (Douglas vs. Veterans Administration, 5 M.S.P.R. 280 (1981).*

My hostile work environment and my react to that thereof was not considered in my termination – where resolve was found in the moving of my workstation.  As a Legal Administrative Specialist and service-connected Combat Veteran (O.I.F. 2003-2004) – I have been filing grievance internally and externally in terms of micro-management, false reporting, intimidation and bullying. In considering Factor 10 of the Douglas guidelines it states,

*"the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question"*

Factor 10 addresses;

*"the potential for the employee's rehabilitation"*

Being that the decision to terminate was made due to so-called "inappropriate behavior", I have evidence that shows my constant request to be reassigned seats due to my hostile work environment. The fact that I my seat was moved and that I could have been reassigned reveals another procedural error.

In the following narrative, evidence and time-line provided you will find a complete record of all protected activities and the adverse actions V.A. took thereafter.

Again, being that the hasty decision to terminate is (1) shrouded in procedural errors; (2) was enacted one week after a grievance was filed; (3) was enacted one month after the Department of Veteran Affairs received Affidavits from a pending E.E.O.C investigation -

evidence shows the retaliatory intentions of the N.C.C Management, Human Resources and the Director's office.

## Misinterpretation of 38 U.S.C 714

In the *"Proposed Removal"* dated September 5, 2019, drafted by N.C.C (National Call Center) Management, N.C.C Manager Mary Jo Towns states that the reason for my *"Proposed Removal"* was due to what she deemed as *"Inappropriate Behavior"* where she states:

*"You have shown you can not be trusted to follow policies and guidance when you perceive it to be at odds with your personal standards of propriety."*

Two issues come to mind when it comes to this statement. The first issue is that the statute is concerned with performance and misconduct not inappropriate conduct, whereas for the purposes of the statute, misconduct is defined as:

*"Neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function."*

I argue that misconduct also means mismanagement according to the Webster Dictionary, where as "inappropriate behavior" means something totally different. According to the Webster Dictionary, *"Inappropriate Behavior"* means:

*"Behavior that was not appropriate or suitable for the time place and situation."*

The definition of misconduct is quite different from inappropriate conduct and according to V.A.'s table of penalty– inappropriate conduct is not an offense that warrants termination from V.A. nor the Federal Government based on the nature of offense and number of occurrences (see table of penalties for title 5, Hybrid title 38 and title 38 Employees).

In my Appeal– it is apparent that procedural errors were made, when considering the pending investigation with a number of amended charges with E.E.O.C. The pending charges are in concerns with – harassment, personality problems (PTSD) and unusual job tension, where my hostile work environment had been reported on six different occasions. And with there being a casual connection between my participation in protected activity, (in participation and opposition) to The Department of Veteran Affairs adverse action, my termination is also in violation of *5 U.S. Code 2302(b)(8), (b)(9)(A)(i), (B), (C), and (D).*

*see appendix A

## Decision to remove (adverse action) dated March 16, 2020 after filing grievance (protected activity)

### March 2020-Janauray 2020

On March 9, 2020, I was notified by my Union Steward and President James Swartz that I was going to be fired on March 9, 2020 due to my validation time and a whistle blower complaint "coming back bogus" as he stated. When explaining that I had not received a "Monthly Coaching Session" (Supervision) in 90 days he said nothing. When asking about the legitimacy of my termination – he said that the decision was finally and there was no room for argument. He asked if I wanted to resign or be terminated. In which I said termination because I knew that there was no merit to my sudden termination where it was apparent that it was a form of retaliation considering the fact that a week prior I filed a complaint of harassment against a superior. My Union Steward and President James Swartz went on to tell me about the procedures

on how I would be removed for the N.C.C and suggested that I clear my desk (see proposal to remove packet).

On March 10, 2020 – during my termination meeting with the Assistant Director Shannon Kelly- issued the finally decision by Director Anthony Milions, which was to terminate me for "Inappropriate Behavior", which was a proposed removal dated September 5, 2019. I was also told that my termination wouldn't take effect until March 16, 2020 and that I was to be reassigned to the mail room until that date. This was a completely different issue from what my Union Steward James Swartz said the day before. I responded to the proposal to remove with evidence by mailing a copy to Director Milion while on detail on 9/13/2019 and provided a copy of the same packet of information – which included a 15-page statement and over 200 pages of evidence to Human Resources. I never received a response nor finally decision until the date of my termination.

On March 3, 2020, I received an instant message from N.C.C Coach Raymond Cebulis instructing me not to answer calls after 5:15. Instead of offering a response or an excuse- I took what he said in stride and completed my workday at 5:15. In preparing to leave for the day- I received an instant message from a co-worker, Legal Administrative Specialist Michelle English asking me to meet them in the break room to discuss something that disturbed them in a conversation that they overheard. Michelle English told me that they overheard N.C.C Lead Edward Johnson making disparaging remarks about me and gossiping about my presence in the N.C.C. She told me that Mr. Edward Johnson was complaining about how he was tired of my job being "saved" due to my service connection and how he believed I was unfit for the job. Keeping Legal Administrative Specialist identity private. I reported this issue right away. On March 4, 2020 – my seat was moved due to me directly reporting to Regional Office Director Anthony

Milions that N.C.C Lead Edward Johnson was micro managing and harassing me (*see email dated 3/5/2020 from ORM*) (*see email dated 3/4/2020 from Coach Raymond Cebulis*).

Since my proposal to be removed– I have gone through great lengths in making sure that my performance meets the performance standards where at the time of my termination – I improved. In a show of excellence – I was regularly recognized by B.A.S. (Benefits Administrative Services), the call center headquarters as a top performer consistently. For the month of January, I received 100% call reviews from B.A.S (Benefit Administrative Services) but in N.C.C Management's publishing of the names for acknowledgement, my last name was purposely lower cased signifying my unequal treatment and hostile environment (*see email dated 3/13/2020 and January 100% power point slide*). I have time and time again prevailed over the challenges presented to me, in regards to performance issues without the support of the NCC management.

During my time in the mail room – I prepared for my last day. I reported the incident to all of the agency familiar with my plight, in hoping for some sort of intervention. At the end of the day on March 13, 2020, E.E.O.C amended and added charges to my investigation based on me promptly notifying my E.E.O.C Case Manager (*see Official ORM Correspondence dated 3/13/2020)*

*see Appendix B for all related evidence*

On February 10, 2020 – E.E.O.C Investigator Florence M. Duchantier – Diaz began her investigation of my E.E.O.C. complaint established February 19, 2019, as a result of the affidavit submitted January 31, 2020 (*see Affidavit for EEOC complaint dated 1/31/2020)*. During the month of February – I received high quality scores (critical performance element) on call reviews

and improved my talk and validation time (critical elements as well) according to systems data. I

never received an official performance review from N.C.C Supervisor Coach Raymond Cebulis.

The Affidavit in question was submitted in response to E.E.O.C Case No. 200H-0325-

2019102219 for charges concerning- Whether I was discriminated against based on disability,

sex and reprisal when from 2017 to present was subjected to a hostile work environment with

respects to a) false accusations, b) laughing, c) mocking, d) name calling, e) hands being placed

in face, f) not responding properly to complaints of harassment and the independent actionable

claim of non-select for Veteran Service Representative position.

*see Appendix C E.E.O.C Affidavit

<u>Proposal to Remove dated September 5, 2019, (adverse action) after several grievances</u>
<u>were filed.</u>

Since 2017 – I have had to endure consistent harassment and unequal treatment from N.C.C Managers where each grievance resulted in me being reassigned new coaches without addressing the issues presented, suspension, termination, reassignment and unwarranted training. After exhausting my grievance rights through the chain of command, in March of 2019, I filed my several grievances with outside agencies and political officials. I will only address the issues that I filed with O.S.C investigation as it relates to my MSPB I.R.A Appeal.

<u>August 2018 – December 2018</u>

On July 18, 2018, I received notification of a potential withholding of my promotion dated June 28, 2019 (see Potential Withholding and Within-Grade increase). In this memorandum which was presented by my then supervisor N.C.C Coach Florence Jefferies-Watford, stated that I had until August 20, 2018 to have my quality score for the year, at the fully successful level of 85%. Over the course of the following month I worked hard in making sure that I was able to meet my critically elements especially my quality reviews and correspondence which was tracked by the reviewing of 5 calls and 5 letters. At that time, the N.C.C announced a change in our quality standard – where the new standards were 7 calls and 7 correspondence. But for what reason the new standards did not apply to me. When asking Coach Florence Jefferies -Watford, why this was the case she simply said that it was "management's" decision. With that being said and the history I had with management: I knew this would be an issue. I was meeting the standard at the time, I received the memo- I was confident in my ability to be deemed fully successful by August 20, 2018. The only issue that was reported was my quality reviews not my validation time which was also a critical element of my performance. Not only did I seek out to

be the best Legal Administrative Specialist in the call center -I also developed a creative writing workshop called "Veterans' Voice" for local Veterans. I handled two workshops under this initiative. One workshop was with Veterans living in the V.A. Domiciliary within the Louis Stokes V.A. Medical Center. The other workshop was in partnership with the Cuyahoga County Library system where I also facilitated "Veterans' Voice" with the Euclid Lyndhurst Branch to serve Veterans throughout Northeast Ohio. Through the professional relationships that I have developed over the years, I was able to coordinate my own volunteer efforts after work, once a week Wednesday on nights, for Veterans in the Domiciliary, and every Sunday for Veterans attending the workshops at library from September 11, 2018 to November 11, 2018. I created "Veterans' Voice" so to teach Veterans how to cope with their military trauma through the creative power of creative and expressive writing. As an avid writer – I use writing as means to copy with my own challenge of living with Post Traumatic Stress Disorder as a Combat Veteran of Operation Iraqi Freedom as a Military Police Officer in the Ohio Army National Guard (2003-2004). In seeking guidance and support – I reached out to the Human Resources and the Assistant Director at the time, Charles Moore letting them know the nature of my volunteer efforts and that I was going to reach out to political officials to avoid any conflict of interest that may arise as a V.A. employee that Volunteered at the V.A. Hospital. In following the advice of former Assistant Director Mr. Charles Moore, I started to develop relationships through correspondence with Ohio Senator Sherrod Brown *(see emails dated 8/16/2019, 8/20/2018, 8/22/2018, 8/21/2018)*.

On August 23, 2018 – three days after the August 20, 2018 deadline mentioned in the memorandum dated 6/28/2018, I received my "Monthly Coaching Session" and it was reported that my performance- in terms of quality was fully successful. It also stated that my validation

time had increased but it was under the 30 min standard. Furthermore, due to national issues with excluded time it was said that supervisors are to consider the more advantageous report for my performance data due to two reports being generated for the purposes tracking performance In submitting all excluded time request from May to August. I received a significate number of denials for my excluded time request*(see Cleveland Agent data dated 8/23/2019)*. Furthermore, I was told that my promotion was submitted and that she would let me know when it had gone through.

Due to issues within the N.C.C management team – the N.C.C hired a new manager, Mary Jo Towns who was scheduled to official start as N.C.C manager on 8/31/2018. *(see email dated 8/27/2018)*. Since having my monthly coaching session dated 8/23/2018 – I had heard nothing about my promotion and the anniversary of my hiring date was September 4, 2018. I started to become anxious. my peer fellow Legal Administrative Specialist - Edward Thomas who had the same issue, a 46 second overage, received their promotion on time with no problems. My persistent inquiries would go unanswered, ignored and forgotten. At that time Florence Jefferies -Watford took a lot of time off or she would work form home or she would leave work early and come in late. So, on August 31, 2018 – I reached out to my union for assistance, where my evidence reveals that my Coach – was more comfortable speaking to Union Steward Dwayne Walker. instead of speaking directly to me as her subordinate *(see emails and instant messages dated August 31,2018)*.

*see Appendix I for evidence concerning this section

On September 5, 2019 – the day after my anniversary, I shared with Human Resources an article written in the Plain Dealer about me and my "Veterans' Voice" efforts (see email dated 9/5/2018 with link to article). On September 5, 2018. my coach Florence Jeffereis – Watford

finally decided to respond to my union steward's request to meet about my step-increase. After I shared the news article about my work with "Veterans' Voice" as a volunteer – Assistant Director Todd Weber sent out an email directing all V.A. employees not to speak with the media. I also was counseled by interim N.C.C Call Center Manager Robyn Ward about the article. In our conversation she asked about the specifics of the project – in regards to when and where and who gave me authorization to speak on such issues, assuming that I was talking about volunteering within the V.A. Regional Office. She spoke about the legal ramifications in concerns with speaking to the media and making false statement- alluding to Assistant Director Todd Weber's legal background- where he sent her to ask me questions about the article.   When I revealed the facts of my volunteer work, the nature and tone of the conversation changed *(see email dated 9/6/2018)*. I received an email from another unknown V.A. employee, a Mr. Daniel Devine Executive Director of the Office of Engagement and Memorial Innovations, who gave me kudos and wanted to know more information about the project. It was ironic because no one in my regional office said anything outside of sharing the article on the V.A. Regional Offices Facebook page *(see email thread dated 9/06/19 entitled "Good Stuff")*. On that same day – I had a scheduled medical appointment to review my blood pressure. I had complained about unfamiliar symptoms of high blood pressure and my service-connected P.T.S.D and was in need of a check-up. When the Nurse Practitioner took my blood pressure, she was alarmed at how high it was and made me sign a refusal to transport to hospital via ambulance form before I was released to go to work *(see Refusal to transport to hospital via ambulance dated 9/6/2018)*. When I arrived at work later that morning – I wasn't feeling well but I endured. Sitting in front of Coach Florence Jefferies – Watford I would often become distracted by the noise level when she was there  I submitted anonymous complaints about the noise levels also. On this particular

day – I decide to record the noise level around me while on a call. I did this on three separate

occasions throughout the month and September 6, 2018 was one of those days she would often

have a number of managers congregating at her and Coach Candice Carter's cubicle. As N.C.C

Managers their noise levels would often disrupt – the work flow of those of us who sat in the row

in front of Coach Candice Carter and Florence Jeffereis-Watford. Those of us seated in that row

were myself, Whitney Rose, Patricia Green and Anthony Swartz *(see voice memo dated*

*9/6/2018).* On September 10, 2018 – Coach Florence Jefferies – Watford finally responded to

my status request in connection with my promotion. But to my dismay – I only received a step

increase not the full grade increase. I was told that I was fully successful in terms of performance

as of 8/23/2018 according to my Cleveland Agent Data report. And my step increase doesn't

speak to what the memorandum dated June 26, 2018. In trying to gain clarity – my Coach started

to avoid me and ignore my emails. Again, during this time – she worked from home a lot and

would also take time off two and three days at a time, as a new coach within the N.C.C. With

that being said communicating with her became complicated. She was never around to provide

technical assistance nor address any issues. She would speak to me directly only in emails or

instant message. She consistently rejected my excluded time request – suggesting that the phone

numbers for the special care calls indicated on my submitted request didn't exist or the calls

never happened where my evidence spoke otherwise. The more I would question her, the more

attitude I would receive. I would speak to her some mornings and she wouldn't speak back. Her

demeanor became more stand-offish after each and every request I made to meet with her. She

would roll her eyes, suck her teeth and even frown at me. Because of the procedural error

regarding my promotion and her uncooperative attitude around sharing accurate information. I

reached to my Union Steward Dwayne Walker letting him know of my issue (*see email thread dated 9/10/2018).*

*see Appendix J for the evidence concerned with this section

On September 12, 2018 – Florence Jefferies Watford instant messaged me asking if I was late for the day. In our exchange- I asked about my promotion and me being reviewed under the new "Universal Standards" in terms of our quality and correspondence reviews being increased from 5 phone calls and 5 letters being reviewed to 7 phone calls and letters for the evaluation of performance. In her reply she gave no reason for the step increase and she said that my validation time was over 30 min. In asking to meet with her about the issue with then interim N.C.C Manager Robyn Ward and a union representative. She stated that we would have a "very detailed conversation" about the issue the next day with H.R. Specialist Jessica Minnich who has nothing to do with the call center- which was another procedural error on the part of N.C.C Management and the Human Resource Department. *(see instant message thread between myself and Florence Jefferies-Watford dated 9/14/2019).* The sudden meeting with H.R. set up red flags and I began to gather evidence for my argument and I reached out to my union steward Dwayne Walker to develop a strategy for the meeting. where I was able to develop a grievance statement with evidence that supported my claim of abuse of power and retaliation for my protected activity *(see instant message thread with Dwayne Walker dated 9/12/2019 and statement ).* On September 13. 2018 – during my monthly coaching session I was presented with data regarding my performance for the month of August where it revealed that for the month of August. my performance was at the exceptional level at 96% for quality. My validation time was over 36 seconds but in the training and coaching comments – it talked about the national issue concerning excluded time – where for three months out of the fiscal year – the process and

system for reporting excluded time was down. In protesting this inaccurate report – I responded that the 36 second overage can be accounted for but I was told it was too late *(see grievance statement dated 9/13/2018)*. On September 14, 2018 – I reached out to union steward Dwayne Walker in asking about next steps. I requested to file an E.E.O.C complaint where we planned on meeting to discuss my statement and documentation *(see instant message thread with Dwayne Walker dated 9/14/2018)*. On that same day – I got into a confrontation N.C.C Leadership over their loud, rude and inappropriate conversation as they gaggled around Coach Candice Carter cubicle which was located behind my assigned work station. In this exchange the group was very loud while I was on the phone servicing a "first Notice of Death" call – N.C.C Lead Bertard Lewis pointed his finger in my face whilst N.C.C Lead Shamia Walker, Training Coordinator Clarence Rowe, and Coach Candice Carter stood bye and laughed. I reported this incident to then interim N.C. Manager Robyn Ward *(see email dated 9/14/2018 "request to move seat")*.  On September 18, 2018 – I contacted my union steward Dwayne Walker about moving forward in filing my claim. I informed him that I was going to leave my statement with evidence in his office for review. This was the second day I recorded the disruptive noise levels in my work area. In this recording you can hear N.C.C Leads Shamia Walker, Bertard Lewis and my Coach Florence Jefferies -Watford converse about non-sense, in an attempt to provoke another incident *(see voice memo dated 9/18/2019)*. I also received an email from Florence Jefferies -Watford speaking on a new issue concerning performance which was validation time. I had no problem with meeting the requirement, but I felt like I was being treated unfairly and my voice was being ignored. I wanted to move forward in filing my official grievance *(see instant message with Dwayne Walker dated 9/18/2018 and email dated 9/18/2018)*. On September 20, 2018 – I was asked to speak with Director Charles-Moore about the incident that occurred between myself and

the individuals involved in the confrontation. In the meeting with Charles Moore he let me know that those who were implicated will be dealt with accordingly and he commended me for having the courage to stand-up for myself and others. I shared with him the problems I was having with my Coach as we went over my performance deficiency in regards to validation time. In acknowledging the issue of my validation time – Assistant Director Charles Moore allowed me to explain one of the many issues and provide evidence that showed Florence Jefferies-Watford inaccurate reporting. But to my dismay – the information that I shared was not strong enough to convince him otherwise. He also stated that my seat was not going to be moved *(see email dated 9/20/2018 "Special Care Calls")*. On September 21, 2018 – I was in correspondence with my union steward Dwayne Walker and instead of reviewing my statement and evidence for the purposes of filing an E.E.O.C complaint, he decided to negotiate me out of the N.C.C into the mail room as a Claims Assistant with my coach Florence Jefferies-Wattord. I was told that either, I take the C.A position and keep my job or file an E.E.O.C complaint and lose my job *(see email dated 9/21/2019)*. At the time my calls were being graded harshly as a form of retaliation with procedural errors, due to my protected disclosure of key N.C.C management. I was not granted performance reviews under the new universal quality standards of 7 calls and 7 letters-which was a set up for failure. The hostile work environment – I thought was the reason for my performance issues in quality for the month. During the week of confronting N.C.C Leadership, I noticed the majority of the calls -3 out of 5- was reviewed during that time and right after I attempted to file an E.E.O.C grievance against my Coach Florence Jeffereis-Watford. In reviewing the calls, I challenged them and at that time my request for rebuttal was being ignored by both Training Coordinator Clarence Rowe and Candice Cole, where she took an entire month to review and also cited procedural and technical errors made by Quality Review

Specialist Marcia Caffey. Although I challenged all call reviews – I reluctantly accepted the C.A. position via email to my union steward Dwayne Walker and Assistant Directors Todd Weber and Charles Moore for the sake of relieving my work related stress, *(see emails dated 9/21/2019 w/ subject of "Union info" and "CA position")*, but in that same day I changed my mind, opting to speak with E.A.P Specialist Laura Scott and Director Anthony Milions. In speaking with Laura Scott, she offered some suggestions and ideas on how to deal with a hostile work environment and she encouraged me to reach out to the Director before I made a final decision on being reassigned *(see email dated 9/25/2018 and 9/26/2018)*. On September 24, 2018 – recorded another instance of a loud and disruptive work environment. In the recording you can hear leadership again keeping up a party atmosphere while I try to service the Veteran. Again, after reporting how the noise levels disrupt my ability to focus on my call *(see voice memo recorded 9/24/2018)* On that same day – I spoke with interim N.C.C Manger Robyn Ward about the confrontation I had with N.C.C Leadership, telling her that the issue of a loud work environment remained. I also shared with her, how I felt like I was being provoked *(see email dated 9/26/2018 subject "Our Meeting")*. In providing my official statement I was confident something would be done. On October 2, 2018 – I provided a detailed written response to interim N.C.C Manager Robyn Ward inquiry regarding my altercation with N.C.C Leadership *(see email dated 10/02/2018)*. On October 4, 2018 – because of this, I decided not be removed from the N.C.C *(see email dated 10/04/2018 and 10/05/2019)*. In closer review of the language Robyn Ward used in stating that "*All complaints of inappropriate behavior are taken serious and addressed.*" In considering that no one implicated in the altercation was fired reveals another level of unequal treatment and is another procedural error that violates #6 of the *Douglas factors* which state, "consistency of the penalty with those imposed upon other employees for the same

or similar offenses" has to be considered. In the charge of "inappropriate behavior" I was treated unequally. N.C.C Lead Bertard Lewis was reassigned to a pilot position especially made for him. For his punishment he became the new "I.T. guy"- receiving a different assignment for pointing his finger in my face, not termination. Coach Candice Carter admitted to her actions and was written up. All of the others were given verbal warnings.

With my promotion still hanging in the balance – N.C.C decided to finally move my seat for what seemed to be a permanent stay in the N.C.C. My performance improved and I was also able to have a harshly graded call review overturned. The change in the overturned score is what finally granted me my promotion. By the end of October and with the overturned score in September- I was deemed fully successful – the same day I was to be reassigned to the C.A. position. On October 26, 2019 my performance data reflected a 98% quality score for the month which changed the need for me to be reassigned even retrained (see emails dated 10/26/2018). On October 29, 2019, I received notification that I was deemed fully successful for the fiscal year but only to be reassigned, not for the GS 9 promotion. I informed Director Anthony Milions about this unfair approach because it was him that encouraged me to remain in the call center (see email thread dated 10/29/2018). On October 31, 2019 – I received notification that call rebuttals dated 9/14/2018 and 9/20/2018 scores had been changed. This revelation sent shockwaves through the N.C.C because the unwritten rule of thumb and culture within the N.C.C was that call scores remained-rarely are they overturned.

*see Appendix k

My consistent grievances and challenges began to pay off under the new management of N.C.C Manager Mary Jo Towns (see email dated 11/01/2018 and 10/31/2018). Instead of moving forward with an E.E.O.C grievance or fighting for my GS 9 promotion my union steward

and president James Swartz and Assistant Director Todd Weber negotiated retraining as a condition of my promotion, the same day my call score were overturned- also changing the nature of the agreement to submit to retraining. If the Training Coordinator Candice Cole would have reviewed my call rebuttals within the one-week guidelines – this issue would have played out much differently.

On November 1, 2018- I signed a memorandum between V.A. and the AFGE agreeing to submit to retraining before the overturned call score was added to my scores for the FY 2018 *(see memorandum V.A. and AFGE dated 11/01/2019 and emails dated 11/1/2018 and 11/2/2018)*. I signed the agreement at 8 a.m. on the day in question and roughly an hour later – I received notice that the rebutted calls had been overturned. In presenting this information to my superiors, I was granted my full promotion – but my Coach Florence Jefferies-Watford and interim N.C.C Manager Robyn Ward still put me in training indefinitely. For three months – I was forced to shadow other Public Contact Representatives in what is called "Double Jacking" of lesser time in grades without management identifying any real performance deficiencies of mine that should be focused on. My retraining was a form of retaliation that everyone I reported the issue to ignored.  Being that I was granted my promotion – I had no choice but to submit to the training just as my union steward James Swartz advised. A Veteran Service Representative position had opened and I applied, confident that my experience and qualification would get me the job not my personal relationships with N.C.C Management – but that was exactly the case. My grievances of a hostile work environment were never fully addressed and wiped off the table. I was to be treated as if I was a new trainee, which added a level of professional embarrassment and unequal treatment, they didn't close me out for the fiscal year and decided to still have me

retrained for reasons that were unclear to me *(see emails dated 11/05/2018, 11/06/2018 and 11/07/2018).*

On November 19, 2019 – I participated in a fact-finding interview concerning a frivolous claim concerning former employee and colleague Whitney Rose where she accused me of looking at aggressively and almost hitting her with a coat hanger. A situation where Whitney Rose stated that she was coerced into filing a grievance by our Coach Florence Jefferies - Watford in a effort to have me perceived in a negative light by upper management *(see Fact Finding Memorandum dated 11/19/2018).* This was stated in front of EEOC Counselor Charlotte Camp and Union Steward Dwayne Walker

*see Appendix L

On December 3, 2019 – I received information concerning an investigation that was conducted on behalf of Whitney Rose where I was encouraged to participate in mediation- in which I did because her allegations had no merit. Initially – I thought my training would only be for three weeks because that the schedule that Coach Florence Jefferies -Watford developed. After the training schedule completed- I returned to my duties back on the phone assuming that my training was over *(see email thread dated 12/10/2018-12/11/2018).* In the email dated 12/10/2018 from Florence Jefferies -Watford- provided a false claim stating that we spoke about me submitting to an 8-week training. This conversation was never had – what we spoke about during that meeting was me being granted my GS 9- there is no record of the agreement that she is speaking of. If she did -I would not have been confused about the reasons for my training. Due to the level of work-related stress my V.A. Mental Health Counselor suggested that I request FMLA for my PTSD At the time – I was triggered due to work related stress where a secondary condition was discovered – Ischemic Heart Disease and Tinnitus two condition that were

developed during my time in the National Call Center *(see email dated 12/12/2018)*. On that same day – I received notification that I advanced to the next phase of the V.S.R application process as a "minimally qualified" applicant. I was sent a Knowledge Skills and Abilities, and Other Characteristics evaluation where I was told – if I met the "best qualified" criteria I would be referred for an interview. As a helping professional with an advanced degree in Social Work and pursuing a Master's Degree in creative writing at the time- believed I was best qualified. Being that this would be a third attempt at becoming a V.S.R I developed "Veterans' Voice" in an effort to enhance my volunteer experience – in showing the Department Of Veteran Affairs and my superiors the level of service that I was committed to when it came to the I CARE philosophy that we were to adhere to as civil servants working for the Department. On December 26, 2018 – an email went asking that we submit our names if we have been recognized by an outside Veteran centric organization or for volunteer work in the community. I presented my work - "Veterans' Voice" in providing a flyer, and links to both the featured news article in the Plain Dealer and the News Channel 5 broadcast that recognized me as a hometown hero. *(see email dated 12/26/2018)*

*\*see Appendix M*

### January 2019 – September 2019

I then decided to file a grievance with E.E.O program Manager Charlotte Camp but in our interview, she stated that my claim had no merit because the training was there to help me. "You're in training – you got my promotion, get your money." Was here response to me wanting to file an EEOC complaint *(see email thread dated 1/22/2019)*. In an attempted to advocate for myself and others, I opposed the V.A.'s work environment and culture. I filed grievances with E.E.O.C concerning employment discrimination concerning a V.S.R. (Veteran Service

Representative) where my Veterans Preference and Veteran Employment Opportunity Act /
Schedule A rights were violated *(see emails dated 1/9/2019 and email and email thread dated
2/21/2019 and Non-Select response form dated 2/20/2019).* I filed my E.E.O.C complaint on
March 4, 2019 *(see ORM letter dated 3/6/2019 and 3/12/2019).* In all three instances – hostile
work environment, abuse of authority and violation of Veterans rights – I provided substantial
evidence in regards to voice memos, emails, statements and medical documentation in an effort
to fully and clearly advocate for myself. I also candidly shared my work issues with fellow co-
workers N.C.C Lead Edward Johnson in seeking moral support.

On April 9, 2019 -I received notification from the Office of Accountability and
Whistleblower Protection that my filing with their office designates my claim as "Abuse of
Power" *(see O.AWP email dated 4/9/2019).* April 19, 2019 – I received notice of partial
acceptance of my EEO complaint where the charge of reprisal and discrimination *(see E.E.O.C
Letter dated 4/19/2019).* As a result of my filings – where I gave permission to disclose my
name in all investigative proceedings- by May of 2019, the Office of Accountability and Whistle
Blower Protection investigated my claim against N.C.C Training Coordinator Supervisor John
McDonald, Training Coordinator Clarence Rowe and Quality Review Specialist Wendell Jordan
(see fact finding memorandum dated 5/3/2019). In my fact-finding interview – I provided
Human Resource Specialist Vicki Baker and George "Andy" Sole with some of the evidence
provided in my grievance concerning the unwarranted training, the unfair treatment and
disrespect. Emails where I was called "newbie" by Training Coordinator Clarence Rowe and
three voice memos that illustrated my loud and disruptive work environment harbored by N.C.C
Management. I also reported the telling of inappropriate during a training class that was at my
expense *(see email dated 5/3/2019).*

*See Appendix E

On May 7, 2019 – I received an email from Human Resource Specialist George "Andy" Sole regarding special hiring authority under both the Veteran Recruitment Act and Schedule A for the Veteran Service Representative position announced in December of 2018. I inquired about the *Schedule A Appointment* and *V.R.A* in January, where I was told by Human Resource Specialist Jessica Minnich that, "The agency did not solicit non-competitive applications for VSC," (*see email thread dated 1/9/2019*). The tone of Mr. Sole's email made me believe that I was going to considered under the special hiring authorities because I am a Combat Veteran with service connect disabilities *(see email dated 5/07/2019 and Character Evidence.)* On May 20, 2019, I emailed Mr. Sole checking the status of my appointment where I was told that I wasn't selected again under the hiring authorities of both Schedule A and V.R.A. I also requested a reason why to no response *(see email thread dated 5/20/2019)*. As a result of H. R's non-responsiveness-I filed a grievance with the Department of Labor citing the violation of my Veteran Employment rights based the Veterans Employment Opportunity Act and Veterans Preference – in regards to points preference in the scoring of my application.

I was reassigned to training on November 13, 2018 and was finally released from re-training June 10, 2019. In an email dated June 7, 2019, Training Coordinator Clarence Rowe congratulated me for completing training and that I would be handling calls on my own. He also commended me on my great customer service, quality, attention to details and exceptional adherence and that my professional standards would not go unnoticed. *(see email dated 6/7/2019)*. On June 11, 2019 – I filed another grievance against N.C.C Lead Mr. Edward Johnson for harassment. The first incident I reported was on April 23, 2019. I reported the incident following the proper chain of command. First going to my Coach N.C.C Supervisor Raymond

Cebulis. I then went to N.C.C Manager Mary Jo Towns requesting Alternative Dispute Resolution- the same right reserved for Legal Administrative Specialist Whitney Rose *(see grievance statement dated 6/20/2019).* On June 14, 2019 – I received notification of amended charges from E.E.O.C for the harassment incident *(see E.E.O.C Notice of Amendment letter dated 6/14/2019).* On June 12, 2019 N.C.C Lead Mr. Edward Johnson provided justification in his steady harassment citing what he over heard me say on a phone call. Notice how Mr. Johnson said that I was on a call but said that the Veteran was on hold. How would he know that the Veteran was on hold? Notice how refused to talk to me about work related issues accusing me of talking to him "forcefully". (see Edward Johnson Statement dated 6/12/2019). I participated in a fact-finding interview on June 20, 2019 against N.C.C Lead Edward Johnson (see fact finding memorandum dated 6/20 2019). On that same day, June 20, 2019 – I received notification of policy violations made one calls that were handled during my training. One call was on March 26, 2019 and the other call was on June 7, 2019. I was released from training on June 10, 2019. I was reassured by N.C.C Supervisor Raymond Cebulis – where it was said that we were going to review the calls together with a Training Coordinator. B.A.S simply asked that the issue be reviewed *(see email dated 6/20/2019 from VBAVACO).* On June 25, 2019 – I submitted more evidence to my claim concerning the violation of my Veteran Employment Rights with the Department of Labor *(see email dated 6/25/2019 Department of Labor).*

Subsequently, other investigations followed from the other agencies I filed grievances with. There were two investigation by the Department of Labor concerning the violation of my Veteran employment rights as well as my Schedule A appointment rights *(see Department of Labor emails dated 6/25/2019 and letters dated 7/11/2019 and 8/9/2019.)* The Office of Special Council decided to close my investigation concerning harassment, false accusations and

intimidation *(see O.S.C. email and official closure dated 6/27/2019)*. On July 11, 2019 – I

reached out Human Resource Specialist Nora Garono in regards to another job positing within

the V.S.C (Veteran Service Center). This position was for an RVSR (Rating Veteran Service

Representative) opening where inquired about the Schedule A and the VRA appointment, where

I was encouraged by her to submit my resume to Human Resource Specialist George "Andy"

Sole in which I did. In his response Mr. Sole proceeded to ask me questions about my service,

questioning if I went to War, stating that is what determines my eligibility for appointment under

the VRA authority. Mr. George Sole from the tone of his emails, acted as if he never approached

me for the VRA, Schedule A appointment. He was reluctant to review and didn't submit my

request for the special appointment (see job announcement dated 7/9/20149 and email thread

dated 7/11/2019).

*See appendix F*

On July 18, 2019, I was harassed again by N.C.C. Lead Mr. Edward Johnson where he

was eavesdropping on a call, waited to go into my mail and retrieved it's content while I was

away at training and reported that I took an incorrect action by sending the next of kin a deceased

Veteran's DD-214 during a notification of death call. When I returned from training a note was

on my desk stating that I took an incorrect action written by my immediate supervisor Raymond

Cebulis. The note accused me of taking an incorrect action where I sent a deceased Veterans

family a copy of the Veterans DD-214. Instead of the DD-214, it was said by my coach that I

should have sent a service verification letter. But my understanding told me different. I knew that

I could send out the DD-214 to a family that is trying to organize the funeral if it was on file. In

reviewing the directions that were left on my seat - I did what my coach told me to do. In taking

the DD-214 over to my coach, he stated that it was the incorrect action because the requestor was

not the Veteran nor authorized third party. I went back to my desk and reviewed the Knowledge Management article published about the releasing a deceased Veteran's record to the next of kin. I shared this new guideline which was updated 7/11/2019, with my Coach Raymond Cebulis as well as N.C.C Manager Mary Jo Towns *(see DD-214 KM Article, hand written note from Raymond Cebulis and an email thread dated 7/18/2019-7/22/2019)*. According to official guidance, the action that I took was the correct action. N.C.C Management argued and said that I was wrong. In an email dated July 22 2019 from N.C.C Manager Mary Jo Towns – she speaks on the issue in contradiction stating,

*"Even though the article says records may be released to next of kin, we are not permitted to release those records without a request in writing."* *(see email dated 7/22/2019)*

As an individual returning from a 9-month training – I was more familiar with the standards in receiving a week long training from the Benefits Administration Service Headquarters in May of 2019 where – V.B.A Leadership advised us to follow K.M and K.M only, but I wasn't allowed to take this advice. N.C.C Management allowed Lead Mr. Edward Johnson to harass and micro-manage me to no end. N.C.C Supervisor failed to advocate for and protect me in this situation ignoring the K.M. article adding to the hostilities against me as my "Coach". Raymond Cebulis made procedural errors by not only ignoring the guidelines set fourth – he misled Mary Jo Towns into an argument that was contradictory and confusing.

On July 18, I filed an appeal with U.S. Merit Systems Protections Board concerning my "non-select" under the special hiring authority of V.R.A and Schedule A. I also filed the same claim with E.E.O.C. Later on, in the appeals process it was revealed that MSPB didn't have jurisdiction *(see email of MSPB E-Appeal Submit confirmation dated 7/18/2019)*. On July 31, 2019 – I received another "non-select" letter concerning the RVSR position that I applied for on

July 11, 2019. Being that my VRA and Veteran's Preference rights were violated due to the Schedule A and V.R.A appointment – I appealed the decision with the U.S. Merit Systems Protections Board again *(see email 7/30/19 and statement dated 7/31/2019)*

*see appendix G*

Going into August one month after being released from my nine-month training, N.C.C Management began taking materially adverse actions against me. My hostile work environment became more and more intense with every new inquiry, amended charge, processed appeal and investigation. As a result of Human Resources building their case against me for the MSPB appeal and my removal. On August 1, 2019 - N.C.C Coach Raymond Cebulis began to review calls during my time in training seeking punishable offense and or violations made during my time in a three month, change of address and direct deposit training environment. In an email sent to then Training Coordinator Candice Cole, Mr. Cebulis requested information concerning the policy of the CADD queue so to share that information with Human Resources. None of the other trainees CADD calls were reviewed *(see email dated 8/1/2019)*.

On August 6, 2019- I filed my second grievance with Department of Labor appealing the "Non-select", I received for the RVSR position, I applied for on July 11, 2019. *(see Veterans' Preference Claim receipt and Department of Labor investigation letter dated 8/9/2019)*. Because H.R. and N.C.C management ignored all of my grievances and reports concerning my hostile work environment. The steady non-select for various positions, the continued violation of my Veteran and disability employment rights as well as the overlooking of my educational background and volunteer experience made me frustrated beyond measure. Frustrated because I knew that I was being treated unequally. It was frustrating because my hostile work environment had a negative effect on my mental and physical health. The violation of my Veteran

27

Employment Rights was hurtful and appalling-considering that others were appointed based on their service, their disability and background. Within each and every application process, the N.C.C Management, Public Contact Team, Human Resource Department and the Veteran Service Center used the "Merit Promotion" system to over-look me as a "best qualified candidate" for every position that I applied for within The Department of Veteran Affairs Cleveland Regional Office. My constant non-select was form of retaliation for my continued disclosures against my superiors. It was frustrating knowing that those who based on their interview and Knowledge Skills Assessment wasn't as qualified as I was and were all women. It was frustrating to know that those who were appointed via Schedule A and V.R.A didn't rank high enough for an interview because they didn't rank based on their writing ability. It was frustrating to see family members be selected after they received a "non-select" just as I did where I challenged H.R. and the V.S.C's decision vehemently. According to the Department of Labor's investigative report, I was ranked third on a list of six on an internal list of applicants and sixth out of fifty on an external list of applicants. This frustration led me to reach out to my Senator, Ohio Senator Sherrod Brown on August 8, 2019. I was contacted via phone by the Senator's Office, where they asked for permission to disclose my name as a complainant and I did. By August 12, 2019 an official congressional inquiry was sent to V.A. headquarters in Washington D.C. *(see congressional request for assistance application dated 8/9/2019, Letter Addressed to Senator Sherrod Brown and Congressional Inquiry letter dated 8/12/2019).* On August 13, 2019 – I received an email from my Coach Raymond Cebulis stating that he suddenly decided to review calls between April 2019 and June 2019 because I released an employee's work information. My spot check was two months after the incident happened and ironically one day after the V.A. received a congressional inquiry from the Office of Sherrod Brown. Although

we didn't go over the calls in question, like Raymond Cebulis said we would, in my mind the issue was resolved, but because of the congressional inquiry the issue was put back on the table, so to have excuse to spot check other calls within a training environment *(see email dated 8/13/2019 and my response dated 8/13/2019)*. In reviewing those calls Coach Cebulis made a number of procedural errors for the sake of compiling evidence to support my termination. The procedural errors surround the error being made within a training environment, the calls were reviewed so to find policy violations- not performance review nor did he address the systems issues and training needs I expressed to him as his subordinate. Because of his sudden low evaluation of my work based on training environment errors, his spot checking should be considered a form of retaliation. On that same day, August 13, 2019 – I received another notification from the Office of Accountability and Whistle Blower Protection – that a disclosure that I submitted was a "Non-Whistleblower" disclosure and that the issue was referred to the Office of the Under Secretary for Benefits for review and disposition. The first email was in concerns with gathering my consent to release my name, in which I did. The date of the email is August 9, 2019 and it also states that they were going to release my name on August 12, 2019 *(see OAWP email dated 7/23/2019, 7/31/2019 and 8/13/2019)*. On August 15, 2019. my Coach Raymond Cebulis drafted a statement so that adverse action could be taken against me. On that same day – I was placed on restricted duty based on the training errors cited in his official statement *(see Raymond Cebulis Statement dated 8/15/2019. email dated 8/15/19 and memorandum assigning me to non-call duties dated 8/15/2019)*. While on restricted duty – I wasn't given any assignments so I was forced to sit at my desk for 8hrs a day doing completely nothing – making it quite obvious that I was an undesirable employee that was being prepared for termination. I followed my regular schedule of start, break, lunch and end of shift times. I

was center of leadership gossip, left out of trainings, promotion withheld, and left out of emails concerning vital information – further ostracizing me from the Legal Administrative Specialist working in the N.C.C and I was still being harassed by N.C.C Lead Mr. Edward Johnson, adding another layer tension to my hostile working environment. I sat on restricted duty for an entire month for allegations of conduct issues centered on the call errors made during my time in training.  During my time on restricted duty- I received notification from the Department of Labor citing that the evidence that I provided did not support my claim of being ineligible and the hiring was based on a "Merit Promotion". The Department of Labor was wrong in its assertion because – I was not allowed to compete (interview). They also failed to consider my educational back ground and experience which were the basis of my non-select, because of this I appealed the decision again with MSPB. *(see Department of Labor notification letter dated 8/21/2019)*.  On August 27, 2019 – I received notification of an amendment made to my E.E.O.C charges where being placed on restricted duty as a form of retaliation was added (see EEOC notification dated 8/27/2019). I also provided a statement to MSPB concerning my RVSR appeal – where the statement with evidence afforded me a preliminary conference hearing dated September 4, 2019 *(see MSPB statement, dated 8/27/2019 and 8/28/2019)* The day after the preliminary conference was ordered, the Human Resource Department and N.C.C Management took adverse action with a proposal to remove which is dated September 5, 2019 giving me until September 16, 2019 to offer a response.  (See MSPB status conference order dated 9/4/2019, Proposal to Remove and my response dated 9/5/2019 and Jessica Minnich email dated 9/4/2019). On September 10, 2019, I participated in a "Summary of Status Conference" where V.A. revealed that they were not acknowledging my education and professional experience – where V.A. Attorney Nick Pasquarella stated that "I wasn't qualified" and accused me of trying to take

advantage of the V.R.A and Schedule A statute in regards to my Veteran and disability employment rights. In gathering information concerning my response to my proposed removal, I requested that I receive a copy of the fact-finding interview dated 5/3/2019. I never received a copy of the interview which was procedural error and the tone was very adversarial *(see MSPB Summary of Status Conference dated 9/10/2019 and email thread between Vicki Baker dated 9.10.2019)*. I received notification that the V.A. did not respond to Senator Sherrod Brown's Congressional Inquiry (see follow-up inquiry Senator Sherrod Brown 9/11/2019). On September 13, 2019 – I mailed a copy of my response and over 300 pages of evidence because I didn't trust the Human Resource Department. I also provided a separate copy of my response with evidence with Human Resource Department during my conversation with Director Anthony Milions about the circumstances surrounding my proposed removal (see email dated 9/13/2019).

On September 24, 2019 the V.A. filed a motion to dismiss my appeal based on them overturning their recent non-select to being referred- although I did not get a chance to compete via interview – based on the Veterans Preference statute. me being simply referred was enough to satisfy the court (see MSPB Agency motion to dismiss). Being that I was referred to the position – I felt the issue was resolved as I anticipated my interview for the R.V.S.R position. I also had not heard a response back from Director Anthony Milions regarding the proposal to remove presented to him on 9/5/2019 by N.C.C Management, where based on the 15-business day guideline Mr. Milons decision to remove should have been rendered by October 5, 2019.

On October 29, 2019, one week after returning from a two-week leave-- N.C.C Lead Edward Johnson reported that I was printing from the work at home printer- where a full-fledged investigation was held, initiated by Mr. Edward Johnson as a form of retaliation. When he saw me trying to finger out my printing issues. instead of offering support about the printing issues I

was having with my assigned printer, Mr. Johnson made procedural errors in not only ignoring me and my technical issues but reporting me to my coach and to Human Resources. Furthermore, Mr. Cebulis spoke about and corrected the issue.  This was an issue where I felt like I did not matter as a service-connected Veteran and Civil Servant. I was not afforded the same protection, support and encouragement that everyone else was. In attempting to address my hostile work environment, I followed procedure in asking for mediation. I filed several grievances with my union and N.C.C leadership as well as with the Directors Offices only have my most serious issues ignored. Before and after my fact-finding interview – N.C.C Lead Edward Johnson tried to intimidate me by standing by the door of the interview.  He was being very obnoxious and disrespectful in our work area after my interview. I reported this issue along with its effects on my physical and mental health as a service-connected Veteran directly to Director Anthony Milions and Human Resources and yet. again nothing was done. *(see emails dated 10/25/2019, 10/29/2019 and 10/30/2019)*

*see appendix H for all evidence concerning this section

The evidence presented with this statement ties the actions of N.C.C Management and The Human Resource Department to the retaliation elements of my *Protected Activity* as a VA Employee. VA leaderships *Materially Adverse Action* and the *Casual Connection* between my proposed and actual removal and my one year's worthy of grievances filed.

Time-line of protected activity for Decision to Remove dated March 16, 2020

*March*

- March 16, 2020 – Terminated for "Inappropriate Behavior" under the authority of U.S.C 714.

- March 13, 2020 Notice of Third Amendment of Mixed Case for Complaint No. 200H.0325.2019102219 filed March 18, 2019.

- March 10, 2020- Received notification that I was to be terminated – where a decision was made concerning the proposal to remove dated 9/5/2019 by Director Anthony Milions.

- March 4, 2020 – Seat was moved due to report of harassment by N.C.C Lead Edward Johnson. An investigation ensued by N.C.C Supervisor Coach Raymond Cebulis.

- March 3, 2020 – Reported harassment and micromanagement of N.C.C Lead Edward Johnson. I reported the incident directly to V.A. Regional Office Director Anthony Milions.

- March 2, 2020 – Co-worker Legal Administrative Specialist Michelle English informed me of disparaging remarks made about me by N.C.C Lead Mr. Edward Johnson to other N.C.C employees

*February*

- February 3, 2020 – E.E.O.C. Investigator Florence Duchantier-Diaz began to investigate E.E.O.C. Claim dated 2/19/2019, by asking clarifying questions surrounding my response to a question that appeared on the Affidavit.

- I received no monthly supervision from coach Raymond Cebulis.

- Name was published incorrectly purposefully by N.C.C Leadership.

## Time-line for a causal connection between my participation in prohibited activity and adverse action for Proposal to Remove dated 9/5/2019

- May 3, 2019 – Fact finding interview concerning an Office Accountability and Whistle Blower Protection.

- June 10, 2019 – Released from training and returned to duty

- June 11, 2019 – Reported "while on call" harassment by N.C.C Lead Edward Johnson.

- On July 11, 2019 results of an investigation concerning me being found ineligible or a VSR position.

- June 20, 2019 – Fact Finding investigation concerning N.C.C Lead Edward Johnson for harassment.

- June 22, 2019 Filed a grievance of harassment with EEOC and OAWP

- August 9, 2019 Investigation started by the Department of Labor due to me being found ineligible for the RVSR position.

- August 9, 2019 a "Request for Assistance" submitted to the Office of Sherrod Brown in opposition of my hostile work environment and the violation of Veteran's Preference as well as the Veterans Employment Opportunity Act.

- August 12, 2019 - a letter from Senator Sherrod Brown requesting that the matter of hostile work environment and violation of Veterans Preference. (See letter dated August 12, 2019)

- August 12, 2019 -OAWP released my name concerning disclosure dated 7/22/2019

- August 13, 2019 - I received notification of mishandled phone calls during my 9-month training environment.

- August 14, 2019- NCC Management and HR were looking for errors in my calls that he spot checked during my first month back on the phone.

- August 15, 2019- Raymond Cebulis provided an adverse statement

- August 15, 2019- I received notification of restricted duty mandated by NCC Manger Mary Jo Towns.

- August 21, 2019- I received notification from the Labor Department informing me of the results from the investigation.

- August 27, 2019 - The Human Resource Department received notification for amended charges to include being over looked for a VSR position and being placed on duty restriction.

- August 28, 2019 - filed a statement with the Merit Systems Board in concerns with the violation of my Veterans Preference and Veteran Employment Opportunity Act Schedule A rights as a service-connected Veteran.

- September 4, 2019 due to the evidence presented to the Merit Board a preliminary status conference was ordered.

- September 5, 2019 Proposal to Remove was presented

- September 11, 2019 follow-up inquiry from Senator Sherrod Brown

- September 13, 2019 mailed response to Director Anthony Milons to detailed regional office in Washington D.C.

- September 16, 2019 – phone conference with Director Anthony Milons and Human Resource Specialist George "Andy" Sole.

- September 24, 2019 – Agency request appeal dismissal regarding MSPB

- October 29, 2019 – fact finding interview concerning the use of work at home printer.

6/24/20

Damien L. Ware
3122 Livingston rd
Cleveland Oh
44120

(216) 219-4753
Damienware04@yahoo.com

## Demand for judgment

In considering the timeliness of my termination and my involvement in prohibited personnel practices in opposition and participation, I am asking that my employment with the Department of Veteran Affairs be reinstated to my position as Legal Administrative Specialist at the same time and grade – annual and sick leave and all health benefits be restored. Disciplinary action taken against N.C.C. Leadership. I am also seeking nonpecuniary compensatory damages due to the exacerbation of my service-connected disability (P.T.S.D. with Ischemic Heart Disease) and the emotional destress that this issue has caused me and my family during the Corona Virus pandemic which has been declared a national emergency.



DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF RESOLUTION MANAGEMENT
151 Knollcroft Road Building 15
Lyons, NJ 07939

In reply refer to: 05E

June 23, 2020

VIA: BOX

Damien Ware  (Damien.Ware@va.gov)
3122 Livingston Rd
Cleveland, OH 44120

SUBJECT: Notice of Advisement of Rights in your Mixed Case EEO Complaint,
Case Number 200H-0325-2019102219, Filed on March 18, 2019.

1.  The purpose of this letter is to provide you a copy of the investigative file for your mixed
case EEO complaint and to advise you of further complaint processing rights.  Your EEO
complaint is a mixed-case complaint because it involves matters that are appealable to
the Merit Systems Protection Board (MSPB).   The portion of your complaint that is
appealable to the MSPB is event 1 of the hostile work environment claim – when on March
9, 2020, complainant was notified of his removal, which is scheduled to become effective
on March 16, 2020.  You have different rights for the mixed and non-mixed portions
of your complaint.

2.  You do not have the right to an EEOC hearing for the mixed portion of your complaint.
The mixed claim portion of the complaint will be transmitted to the VA Office of
Employment Discrimination Complaint Adjudication (OEDCA) following your election on
the non-mixed portion of the complaint, which is outlined below in paragraph 5.  OEDCA
will issue a Final Agency Decision (FAD) within 45-calendar days of its receipt from this
office on the entire complaint if a FAD is requested for the non-mixed portion or on only
the mixed portion if an EEOC hearing is elected for the non-mixed claims. The decision
will advise you of your right of appeal to the MSPB, your right to request a hearing in
connection with your appeal to the MSPB, and of the 30-calendar day time limit within
which to file such an appeal.

3.  If you have not received a copy of the FAD on your mixed claim within 120-calendar
days of the date you filed your formal complaint, you have the right to appeal to the MSPB
without waiting further.  You may not, however, file an appeal before the 121st day, unless
you receive the FAD sooner.  Any appeal that you may file should be addressed to:

Michele Schroeder, Regional Director
Merit Systems Protection Board
230 South Dearborn Street
31st Floor
Chicago, IL 60604-1669
Efile: www.mspb.gov

4. If you have not received a copy of the FAD on your mixed claim within 120-calendar days of the date you filed your formal complaint and you do not wish to appeal to the MSPB, you also have the right to file a civil action in Federal District Court on the mixed claim. If you file a civil action and you do not have an attorney or are unable to obtain the services of an attorney, the court, in its' discretion and upon your request, may appoint an attorney to represent you in this matter. The court may also authorize commencement of the civil action without the payment of fees, costs or security. Finally, if you decide to file a civil action, you must name the Secretary of Veterans Affairs as the defendant.

5. Regarding the non-mixed portion of your complaint, you have the right to request one of the following options:

- You may elect an immediate final agency decision from the VA's Office of Employment Discrimination Complaint Adjudication.

OR

- You may elect a hearing before the U.S. Equal Employment Opportunity Commission[1].

OR

- You may withdraw your complaint which would cease further processing of your complaint.

Please see the attachment titled *Complainant Rights – Post Investigation (Mixed Case)* for specific information regarding your options for the non-mixed portion of your complaint.

6. We have also attached an election form with your processing options which is only applicable to the non-mixed portion of your complaint. You must choose one of these options within 30-calendar days of your receipt of this letter.

Please note if you elect a hearing before the EEOC, you may file a request for hearing and submit relevant documents through the EEOC's Public Portal.

To access the Public Portal, go to https://publicportal.eeoc.gov. To begin, click on the link: "Filing with EEOC" and answer the questions. After you submit your request for a hearing, complainants can then use the Public Portal's "My Cases" feature to view their hearing matters in one convenient location. Complainants can also identify and manage their representative contact information in the Portal. Once identified by a complainant, registered representatives can then upload documentation on their client's behalf.

---

[1] You must send a copy of your EEOC hearing request to ORM. *Failure to provide a copy of the request to the agency may result in forfeiture of the right to a hearing.* You are *strongly encouraged to use email to submit your hearing request to ORM.*

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

THIS IS AN IMPORTANT RECORD
SAFEGUARD IT

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO. |
|---|---|---|
| WARD, DANIEL LAMONT | ARMY/USAR | |

| 4.a. GRADE, RATE OR RANK | 4.b. PAY GRADE | 5. DATE OF BIRTH (YYYYMMDD) | 6. RESERVE OBLIG. TERM DATE |
|---|---|---|---|
| PV2 | E2 | 1979 11 | Year 2005 Month 1 Day 7 |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| BROOK PARK, OH | 9507 UNION AVE<br>CLEVELAND, OH 44105 |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8.b. STATION WHERE SEPARATED |
|---|---|
| D1 (CMF) MBAT SUPPLY AR | FORT LEE, VA 23801 |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE |
|---|---|
| 335 MILITARY POLICE BN TPO, 4335 SNOW ROAD, BROOK PARK, OH 44142 | Amount: $ |

11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.)

92A MILITARY SUPPLY SYSTEM MAN 2 YEARS MOS
//NOTHING FOLLOWS

| 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|
| a. Date Entered AD This Period | 2003 | 05 | 24 |
| b. Separation Date This Period | 2004 | 02 | 27 |
| c. Net Active Service This Period | 0000 | 09 | 04 |
| d. Total Prior Active Service | 0001 | 02 | 16 |
| e. Total Prior Inactive Service | 0000 | 01 | 08 |
| f. Foreign Service | 0000 | 05 | |
| g. Sea Service | 0000 | 00 | 00 |
| h. Initial Entry Training | 2003 | 01 | 04 |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)

ARMY COMMENDATION MEDAL (2ND AWARD)//ARMY FEDERAL GOVERNMENTS ACHIEVEMENT MEDAL//NATIONAL DEFENSE SERVICE MEDAL//HUMANITARIAN SERVICE MEDAL//ARMED FORCES RESERVE MEDAL WITH M DEVICE 2ND AWARD //ARMY SERVICE RIBBON//ARMY RESERVE COMPONENTS OVERSEAS TRAINING RIBBON (4TH AWARD)//NOTHING FOLLOWS

14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed)

NONE OR TRAINING PROGRAMS

| 15.a. COMMISSIONED THROUGH SERVICE ACADEMY | Yes | No | 15.b. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No | 16. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|---|---|---|
| | | X | | X | | |

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | No |
|---|---|---|
| | | |

18. REMARKS

DATA HEREIN SUBJECT TO COMPUTER MATCHING WITHIN DOD OR WITH OTHER AGENCIES FOR VERIFICATION PURPOSES AND DETERMINING ELIGIBILITY OR COMPLIANCE FOR FEDERAL BENEFITS//SERVICE IN SOUTHWEST ASIA 20031115 20040119//INDIVIDUAL COMPLETED PERIOD FOR WHICH ORDERED TO ACTIVE DUTY FOR PURPOSE OF POST SERVICE BENEFITS AND ENTITLEMENTS//ORDERED TO ACTIVE DUTY IN SUPPORT OF OPERATION ENDURING FREEDOM/IRAQI FREEDOM IAW 10 USC 12302//MEMBER HAS COMPLETED FIRST FULL TERM OF SERVICE//SERVED IN DESIGNATED IMMINENT DANGER PAY AREA//NOTHING FOLLOWS

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - include Zip Code) |
|---|---|
| 9507 UNION AVE<br>CLEVELAND, OH 44105 | CLIFTON L SPENCER<br>9507 UNION AVE<br>CLEVELAND, OH 44105 |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (DVA). QUICK VET. ADDRESS | X | Yes | No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|---|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | | | | RICHARD A. JOHNSON, CPT, CHIEF, TRANSITION C |

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| RELEASE FROM ACTIVE DUTY | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AR 635-200, CHAP 4 | LBK | NA |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| COMPLETION OF REQUIRED ACTIVE SERVICE |

| 29. DATES OF TIME LOST DURING THIS PERIOD | 30. MEMBER REQUESTS COPY 4 |
|---|---|
| NONE | Initials |

DD Form 214 AUTOMATED NOV 88    Previous editions are obsolete.    SERVICE - 8



1006

FROM:

D. L. Ware
3122 Livingston Rd
Cleveland OH
44120



TO: Carl B. Stokes U.S. Court Ho
Clerk's Office
801 West Superior Ave
Cleveland Ohio
44113

DELIVERY DAY: 07/03/20